**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JPD, INC. D/B/A NORTHLAND**
**MEDICAL PHARMACY, et al.,**

          **Plaintiffs,**                **Case No. 2:07-cv-646**
                                        **JUDGE GREGORY L. FROST**
      **v.**                        **Magistrate Judge Mark R. Abel**

**CHRONIMED HOLDINGS, INC.,**

          **Defendant.**

**OPINION AND ORDER**

This diversity action is before the Court for consideration of Defendant's motion to stay proceedings and direct arbitration (Doc. # 3), Plaintiffs' memorandum in opposition (Doc. # 12), and Defendant's reply memorandum (Doc. # 13).  For the reasons that follow, the Court finds the motion not well taken.

**I.  Background**

Plaintiff JPD, Inc. d/b/a Northland Medical Pharmacy ("Northland") is an Ohio corporation.  All other individual plaintiffs, shareholders of JPD, Inc., are Ohio residents. Defendant, Chronimed Holdings, Inc. d/b/a StatScript Pharmacy, a wholly owned subsidiary of BioScrip, Inc., (collectively "Chronimed") is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota.

In October 2005, Plaintiffs sold Northland to Defendant.  Pursuant to that sale, JPD received payment in 2006.  JPD's majority shareholder, Plaintiff James C. DiCello, entered into an employment contract under which he would serve as Northland's pharmacist-in-charge.  The purchase agreement provided that DiCello and the sellers would then receive an Additional

1

Purchase Price on a sliding scale if Northland's earnings before interest, taxes, depreciation, and amortization ("EBITDA") equaled or exceeded $2.7 million for 2006.  (Doc. # 3, Ex. A, § 2.3.)  The agreement required Defendant to provide DiCello with financial statements and an EBITDA calculation for each month in 2006, not later than 25 days after the end of each month.  (Doc. # 3, Ex. A, § 6.7.)  Then, by March 15, 2007, Defendant was to provide DiCello with the 2006 EBITDA calculation, complete financial statements, documentation supporting the calculation, and an Audit Certificate, which is a certificate certifying the financial information used in the calculation.  (Doc. # 3, Ex. A, § 2.3(a).)  Plaintiffs assert that Defendant failed to produce the required documents, but informed Dicello in a May 24, 2007 letter that because Northland's 2006 EBITDA was $1,614,851, below the minimum amount, there would be no payment of the Additional Purchase Price.  (Doc. # 3, Ex. B.)

Section 2.3(b) of the Stock Purchase Agreement provides that if Plaintiffs disagree with Defendant's calculation of the 2006 EBITDA, Plaintiffs' representative must notify Defendant in writing of the disagreement within fifteen business days.  This notice, termed an Objection Notice in the purchase agreement, requires Plaintiffs to set forth "in reasonable detail" the basis for the disagreement and Plaintiffs' own calculation of the EBITDA.  The agreement requires that the parties shall undertake a good faith effort to resolve the dispute themselves, but if no resolution is reached within fifteen business days of delivery of the Objection Notice (or longer, by agreement), "such dispute shall be submitted to, and all issues having a bearing on such dispute shall be resolved by the Accounting Referee."  (Doc. # 2-2, Ex. A. § 2.3(b).)

In a provision preceding the arbitration clause, the purchase agreement defines the "Accounting Referee" to be "the Columbus, Ohio office of [accounting firm] KPMG, LLP."

2

(Doc. # 2, Ex. A § 2.2(b).)  The arbitration provision later provides in relevant part:

> In making its determinations, the Accounting Referee may reevaluate only those items or amounts as to which Sellers' Representative has disagreed, and in no event shall the Accounting Referee's determination with respect to such disputed items, amounts or calculations be (i) in excess of the greater of the Sellers' Representative's or Buyer's determination of the same item, amount or calculation or (ii) less than the lesser of Sellers' Representative's or Buyer's determination of the same item, amount or calculation.  The Accounting Referee's resolution of such dispute shall be final, conclusive and binding on the parties.

(Doc. # 2-2, Ex. A. § 2.3(b).)

Thus, after receiving Defendant's EBITDA calculation, Plaintiffs filed a June 15, 2007 Provisional Notice of Objection that disputed the calculation.  (Doc. # 3-2, Ex. C.)  Defendant responded to Plaintiffs' objection in a July 6, 2007 letter that asserted that the company had provided Plaintiffs all the information it was required to provide and that because the objection was deficient under § 2.3(b) of the purchase agreement, the objection was not "sufficient for purposes of initiating the procedures specified in § 2.3(b)."  (Doc. # 3-2, Ex. D at 3.)

In response, Plaintiffs filed the instant action on July 9, 2007.  Their Complaint alleges a litany of purported breaches of the purchase agreement by Defendant and asserts claims for breach of contract, for promissory estoppel, for an accounting, and for unjust enrichment.  (Doc. # 2 ¶¶ 59-85.)

Defendant thereafter filed a motion to stay this litigation and to order arbitration (Doc. # 3) based on § 2.3(b) of the purchase agreement.  Plaintiffs oppose the motion on numerous grounds ranging from alleged misconduct by Defendant to an assertion that although Plaintiffs agreed to arbitrate disputes over the items and amounts included in the 2006 EBITDA calculations, they never agreed to arbitrate every dispute under the purchase agreement.  The parties have completed briefing on the issues involved, and Defendant's motion is now ripe for

3

disposition.

## II.  Discussion

### A.  Standard Involved

Defendant moves this Court to compel arbitration and to stay this litigation during the

arbitration.  The Sixth Circuit has explained the inquiry related to such a motion:

> When considering a motion to stay proceedings and compel arbitration
> under the [Federal Arbitration] Act, a court has four tasks: first, it must determine
> whether the parties agreed to arbitrate; second, it must determine the scope of that
> agreement; third, if federal statutory claims are asserted, it must consider whether
> Congress intended those claims to be nonarbitrable; and fourth, if the court
> concludes that some, but not all, of the claims in the action are subject to
> arbitration, it must determine whether to stay the remainder of the proceedings
> pending arbitration.

*Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000) (citing *Compuserve, Inc. v. Vigny Int'l*

*Finance, Ltd.,* 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)).

### B.  Analysis

The briefing before this Court presents the issue of whether the Court can order

arbitration when Defendant initially refused to consider the arbitration provision of its agreement

invoked and now, only after the litigation has commenced, seeks to compel arbitration.  As

discussed below, Defendant's refusal to arbitrate arose from the company's subjective decision

that Plaintiffs had filed an insufficient objection.  This raises the issue of who can decide

whether the objection was sufficient to initiate the arbitration procedures.

The United States Supreme Court has explained that

> a gateway dispute about whether the parties are bound by a given arbitration
> clause raises a "question of arbitrability" for a court to decide.  See *id.,* at 943-
> 946, 115 S.Ct. 1920 (holding that a court should decide whether the arbitration
> contract bound parties who did not sign the agreement); *John Wiley & Sons, Inc.
> v. Livingston,* 376 U.S. 543, 546-547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)

(holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation).  Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court.  See, *e.g.*, *AT & T Technologies, supra,* at 651-652, 106 S.Ct. 1415 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241-243, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement).

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  Thus, the issue of whether all of the issues involved herein are subject to arbitration is for this Court, while the issue of whether a party has satisfied the prerequisites to arbitration is a matter for the arbitrator.  *Id.* (stating that " ' "procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide" (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) and that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.' " (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24-25 (1983))).  *See also United Steelworkers of Am., AFL-CIO-CLC,  v. Saint Gobain Ceramics & Plastics, Inc.*, ___ F.3d ___, 2007 WL 2827583 (6th Cir. Oct. 2, 2007).  Whether Plaintiffs' objection was deficient is not for either this Court or Defendant to decide.

Plaintiffs argue that the Court should deny compelled arbitration because the arbitration is no longer able to render a quick decision, Defendant has acted in bad faith, and Defendant has breached the arbitration agreement.  The Court recognizes that Defendant has breached at least some portions of the purchase agreement; for example, Defendant failed to produce its calculation by deadlines set forth in § 2.3(c) of the purchase agreement.  Plaintiffs argue that this and other conduct should preclude Defendant from enforcing the arbitration provision under

principles of equitable estoppel.

The issue of estoppel introduces complexity into a fairly simple set of facts.  In what is arguably dicta, the United States Supreme Court has recognized that comments to the Revised Uniform Arbitration Act of 2000 designate waiver and estoppel as issues of procedural arbitrability presumptively for disposition by the arbitrator.  *Howsam*, 537 U.S. at 85.  Other courts, including the First Circuit, have declined to agree and have held that the issue of waiver based on litigation conduct is best suited for judicial disposition.  *See, e.g., Marie v. Allied Home Mort. Corp.*, 402 F.3d 1, 11 (1st Cir. 2005).  Other judicial officers in this District have agreed with the First Circuit's rationale.  *See Reidy v. Cyberonics, Inc.*, No. 1:06-CV-249, 2007 WL 496679, at *2-8 (S.D. Ohio Feb. 8, 2007); *Konica Minolta Bus. Solutions, U.S.A., Inc. v. Allied Office Prods., Inc.*, No. 2:06-cv-71, 2006 WL 382746 1, at *10 (S.D. Ohio Dec. 27, 2006).  Adopting by reference the sound reasoning of these roughly analogous cases, particularly the detailed rationale of *Marie*, this Court must conclude that Defendant's conduct defeats its recent invocation of arbitration.[1]  This is an atypical result given the presumption favoring arbitration,

---

[1]  Two comments are necessary.  First, this Court recognizes that the Sixth Circuit has cited in passing the Supreme Court's language in *Howsam* that issues such as waiver, laches, and estoppel are for the arbitrator to decide.  *See United Steelworkers of Am., AFL-CIO_CLC*, 2007 WL 2827583, at *3, 7.  That court of appeals case involved a time-limit prerequisite to arbitration, however, and did not include the issue of whether waiver, laches, and estoppel are indeed outside a court's purview.  In contrast, the Sixth Circuit has explicitly and specifically addressed a portion of that list in the post-*Howsam* case of *International Union v. Cummins, Inc.*, 434 F.3d 478 (6th Cir. 2006).  In that case, the Sixth Circuit held that "[l]aches is an equitable defense to arbitration that is properly considered by the court rather than by the arbitrator."  *Id.* at 486 (citing *Amalgamated Clothing Workers of Am. v. Ironall Factories Co.*, 386 F.2d 586, 591-92 (6th Cir. 1967)).  *See also Dantz v. American Apple Group, LLC*, 123 F. App'x 702 (6th Cir. 2005) (court resolving waiver issue).

Second, the Court notes that Marie dealt with litigation-related conduct–specifically conduct before the EEOC–and explicitly did not opine on the proper division of labor between courts and arbitrators for conduct that is not litigation related.  *Marie* did, however, note that

but it is a result compelled by an unusual set of circumstances.

Unlike in *Reidy*, the party seeking to compel arbitration in the instant case has not actively participated in litigation without invoking a claim to arbitration.  But as *Reidy* counsels, "[a] party can waive its right to arbitration 'when the party actively participates in litigation or acts inconsistently with its rights to proceed with arbitration.' " 2007 WL 496679, at *4 (quoting *Uwaydah v. Van Wert County Hosp.*, 246 F. Supp. 2d 808 (N.D. Ohio 2002)).  This conclusion informs today's dispute, where estoppel arises not by waiver, but by reliance on forfeiture of the right to arbitrate.

Defendant's pre-litigation conduct is at odds with its right to proceed to arbitration.  In its July 6, 2007 letter to Plaintiffs' counsel, counsel for Defendant detailed at length asserted deficiencies in Plaintiffs' objection to Defendant's EBITDA calculation and concluded:

> I understand that Mr. Rosenbaum and Mr. Posner met with Mr. DiCello in Orlando, Florida, two weeks ago, and that BioScrip remains prepared to meet with him or you to discuss this matter with a view toward an amicable resolution. Buyer does not, however, consider your letter sufficient for purposes of initiating the procedures specified in § 2.3(b).

(Doc. # 3, Ex. D.)  This paragraph does not invite pursuit of arbitration or even suggest that the parties' dispute is capable of arbitration.

Defendant asserts that its letter invited Plaintiffs to participate in "the second step" of the arbitration process, which is to engage in a reasonable, good faith effort to resolve the dispute before proceeding to arbitration.  (Doc. # 13, at 2.)  This assertion does not mesh with the language of Defendant's July 6, 2007 letter.  The last sentence of the last paragraph of that letter,

---

"[t]he conduct allegedly constituting waiver in a given case could conceivably be non-litigation-related."  402 F.3d at 14 n.9.  This Court finds *Marie*'s rationale applicable to the conduct at issue in the instant case, conduct that preceded (and in all probability caused) this litigation.

7

reproduced above, specifically states that because Defendant regards Plaintiffs as having failed to lodge a sufficient objection, the § 2.3(b) procedures were not "initiat[ed]."  The logical conclusions drawn from this representation are that Defendant regards Plaintiffs as having accepted by default Defendant's EBITDA calculation and that Defendant's invitation to negotiate cannot be talks *under* the § 2.3(b) step (because the parties never get there absent an objection), but must be proposed talks *extrinsic to* § 2.3(b).  Accepting Defendant's construction would conflict with the language of the letter and would mean that Defendant was telling Plaintiffs, "Although you failed to file an objection sufficient to trigger the § 2.3(b) procedures, we will proceed to the next required step in those procedures while telling you that those procedures have not been initiated."  The unusual illogic of this proposition must counter the presumptions favoring both arbitration and that the arbitrator decide the issue of forfeiture.  The paragraph's proposal of the alternative process of an apparent negotiation thus cannot logically be regarded as the pre-arbitration, inter-party discussion contemplated as part of the § 2.3(b) procedures that Defendants now suggests it was.

Defendant's conduct is perhaps more a forfeiture of the right to arbitrate using Plaintiffs' objection than a waiver, although there may be a possible argument that Defendant's conduct is in fact an express waiver of the right to arbitration.  The label is essentially a distinction without a difference insofar as the end result is conduct by Defendant upon which Plaintiffs relied, which led to filing a lawsuit.

By any charitable construction, Defendant's conduct therefore amounts to action

warranting estoppel of the ability to now invoke arbitration.[2] *Cf. Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) (holding by a court, not an arbitrator, that a party can waive an agreement to arbitrate through actions that are inconsistent with reliance on the arbitration agreement); *see also O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 355-57 (6th Cir. 2003) ("while there is a strong presumption in favor of enforcing arbitration rights, both this Court and our sister circuits have been willing to find under appropriate circumstances that a party has waived its right to arbitrate by virtue of its actions in delaying the right to the point of prejudicing the other party"); *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 14 (1st Cir. 2003) (finding forfeiture of right to arbitrate); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (recognizing that actions inconsistent with a contractual right to arbitration can forfeit the right to compel arbitration).

In reasonable reliance on Defendant's declaration that the parties would not engage in § 2.3(b) procedures, which would have included a component in which the parties attempted to resolve the matter prior to proceeding to the arbitrator, Plaintiffs rejected the suggestion to pursue talks *outside* the § 2.3(b) context and filed the instant lawsuit. *See* Doc. # 12, Ex. B, DiCello Decl. ¶ 3. Prejudice exists because Defendant thus led Plaintiffs to incur the expense and trouble of initiating a federal lawsuit, raising an issue of equitable estoppel. *See Great Earth*

---

[2] The Court recognizes that Plaintiffs generally assert that Defendant has sought to avoid its obligations under the purchase agreement, while specifically pointing to Defendant's alleged bad faith and two specific breaches of the EBITDA/arbitration provisions. It is important to note that Plaintiffs' frustration-of-purpose argument implicitly informs its equitable estoppel argument, in that the same basic concerns and events often overlap. The Court need not decide whether *all* of the conduct either separately or collectively could serve to support estoppel here, because Defendant's subsequent post-objection statement that it considered the § 2.3(b) procedures not invoked sufficiently supports application of equitable estoppel, even if the parties give the issue only general coverage in their briefing.

*Cos., Inc. v. Simons*, 288 F.3d 878, 895 (6th Cir. 2002) ("Equitable estoppel applies where a party intentionally or negligently induces a party to believe facts and the other party relies upon that belief and would be prejudiced if the first party is allowed to deny those facts.").

The decision of whether Plaintiffs' objection was sufficient to compel arbitration was for the arbitrator, not Defendant, and Defendant's conduct (e.g., the refusal to proceed to § 2.3(b) inter-party talks and possibly arbitration) made the issue of arbitration one for judicial disposition. Equitable considerations and the evidence before the Court weigh against Defendant's successful invocation of the presumptive right to compel arbitration and to obtain a stay. *See* 9 U.S.C. § 2 (equitable considerations can vitiate arbitration contract); 9 U.S.C. § 3 (a court shall stay a proceeding providing the applicant seeking a stay is not in default in proceeding with arbitration).

### III. Conclusion

For the foregoing reasons, the Court concludes that equitable estoppel bars compelled arbitration in this action. Having reached this conclusion, the Court need not and does not reach the parties' alternative arguments for and against arbitration. The Court **DENIES** Defendant's motion to stay proceedings and direct arbitration. (Doc. # 3.)

**IT IS SO ORDERED**.

_____ /s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE